UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Raul ARELLANO, <br><br> Plaintiff, <br><br> v. <br><br> MILTON, et al. <br><br> Defendants. | Case No.: 15-cv-2069-JAH-AGS <br><br> **REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 59)** |

Plaintiff, a prisoner, claims he suffered a seizure because the prison refused him his epilepsy medication and refused to switch him to his preferred treatment plan. Although most of plaintiff's claims fail, a triable issue exists regarding the failure to give plaintiff his prescribed medication for epilepsy. The Court recommends denying defendants' motion for summary judgment as to that claim, but granting summary judgment on all of plaintiff's other claims.

## FACTUAL BACKGROUND

On July 22, 2014, Arellano claims he suffered a seizure. (ECF No. 12, at 6.) Prior to his seizure, Arellano missed six of his last seven doses of Keppra, his epilepsy medication, including his evening dose on July 22, 2014. (ECF No. 59-3, at 27.) Arellano claims the

1

pill line nurse, defendant Melton,[1] refused to give him his medication because he had a paper ID, which had been given to him as a temporary ID by the prison. (ECF No. 97, at 10.) Arellano claims that he told Melton a seizure was imminent and that he "know[s] when [he is] about to get a seizure." (ECF No. 97, at 1.) He also suggests in a deposition that Melton may have withheld the medication for his being late to the pill line, although defendants claim he did not show up at all. (ECF No. 59-2, at 9; ECF No. 59-1, at 15.) Critically, however, there is no evidence, by affidavit or declaration, to support either of these assertions. Because the evidence must be viewed in a light most favorable to the nonmoving party, the discussion will be limited to improper ID.

A month after the episode, Arellano saw a prison doctor, defendant Chau. (ECF No. 12, at 7.) A previous doctor had prescribed Arellano both Keppra and Gabapentin. (ECF No. 59-3, at 3.) Arellano told Chau to switch his medication to Gabapentin because he was having side effects from Keppra and thought the previous treatment was better. (*Id.*) Chau set up an appointment for Arellano to see a neurologist, who concluded that a seizure every 30 days on his medication was normal. (*Id.* at 9.)

When Chau refused to change the prescription, Arellano filed a prison grievance stating he wanted his medication changed. (*Id.*) The grievance was denied, and when Arellano appealed, it was sent to defendants Roberts and Glynn. (ECF No. 12, at 10.) Roberts and Glynn denied the appeal. Arellano then appealed to the third level, which was reviewed by defendant Lewis. (*Id.*) Lewis denied the appeal stating that because Arellano did not have neurological deficits, he did not meet the criteria for Gabapentin. (*Id.* at 11.) Arellano filed this action alleging his medical care or lack thereof violated the Eighth

---

[1] In Arellano's complaint, he spells the nurse's name "Milton," but in subsequent filings defendants have spelled the name "Melton." For clarity, the Court will refer to the defendant as "Melton."

Amendment, the Americans with Disabilities Act, and procedural due process. (ECF No. 12.) Defendants move for summary judgment on all claims. (ECF No. 59.)

**DISCUSSION**

I. *Deliberate Indifference*

According to the Eighth Amendment, "cruel and unusual punishments [may not be] inflicted." "To violate the Cruel and Unusual Punishments Clause, a prison official must … [be] deliberate[ly] indifferen[t] to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Prison officials are deliberately indifferent if (1) they are "aware of facts from which the inference could be drawn that a substantial risk of harm exists," (2) "draw the inference," and (3) recklessly disregard the risk. *Farmer,* 511 U.S. at 837; *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).

Even if Arellano can show deliberate indifference by prison officials to his serious medical needs, prison officials have another layer of protection, to-wit: qualified immunity. Overcoming defendants' qualified immunity is possible only where a plaintiff can show he was "depriv[ed] of a constitutional or statutory right" and the constitutional "right was 'clearly established.'" *Taylor v. Barkes,* 135 S. Ct. 2042, 2044 (2015); *Hamby v. Hammond*, 821 F.3d 1085, 1090 (9th Cir. 2016).

A. Melton

Arellano claims Melton was deliberately indifferent when she withheld his prescribed medication. (ECF No. 12, at 11.) "[A] prison official acts with deliberate indifference when [s]he ignores the instructions of the prisoner's treating physician," such as refusing to provide prescribed medication. *Egberto v. Nev. Dep't of Corr.,* 678 F. App'x 500, 505 (9th Cir. 2017).

Arellano claims he was denied Keppra, his epilepsy medication, because he had an improper ID. (ECF No. 97, at 10.) Epilepsy is a serious medical need. *Hudson v. McHugh,* 148 F.3d 859, 863 (7th Cir. 1998). The pill line nurse—in this case Melton—must record whether a prisoner receives medication, and so in the absence of evidence from defendant to the contrary, Melton is considered to have had notice of the missed doses during the

relevant period. Because Melton did not refute this under oath, a reasonable jury could find that Melton—as a nurse—was aware of the need for the medication to treat epilepsy, drew the inference that there was a risk to Arellano if he did not receive such medication—particularly due to the record of several recent missed doses—and his claim that he told Melton he was about to have a seizure without his medication, and recklessly disregarded the risk by refusing to give Arellano his medication.[2] Defendants argue the medication log shows he was not present in the pill line, however the log simply shows whether he received his medication or not, and both parties agree he did not. (ECF No. 59-1, at 15.) The log does not establish the reason he did not receive his medication. Although Melton claims Arellano did not show up to receive his medication, he claims otherwise and credibility is a determination for the jury. *Goldman v. United States,* 245 U.S. 474, 477 (1918).

Additionally, defendants argue that missing a single dose of Keppra is insufficient to trigger a seizure and have offered expert testimony to support that position. (ECF No. 59-3, at 5 (Dr. Feinstein's declaration stating "it is my opinion that it is highly unlikely that missing a single dose of Keppra would cause a seizure in the manner Plaintiff alleges."). First, even though it may be highly unlikely, that does not mean it cannot—or did not—occur. Second, Arellano has sworn under the penalty of perjury that he feels certain symptoms immediately before a seizure but that he can head off a seizure if he gets his medication. (*See* ECF No. 97, at 1-2; *see also id.* at 16 (swearing the document under penalty of perjury).) He also swears that he felt those symptoms on July 22, 2014, and told Melton as much. (*See id.* at 2.) Finally, according to the medical records, Arellano did not miss a single dose of Keppra, he missed a number of doses before he allegedly reported to

---

[2] While a prisoner being absent from the pill-line may, for practical reasons, justify the failure to provide medication, the withholding of medication is not a proper sanction for disciplinary violations.

4

the pill line to get his medication from Melton. (*See* ECF No. 59-3, at 27 (medication chart indicating Arellano missed 9 of 14 doses in the week before the seizure).)[3] A reasonable fact finder could conclude Melton knew about his medication history—since it appears it was her responsibility to fill out that chart—and disregarded it when she withheld his medication on July 22, 2014, for his failure to have a proper ID. Thus, a jury could conclude Melton was deliberately indifferent to plaintiff's serious medical need.

"Intentionally interfering with the treatment once prescribed" has been clearly established as deliberate indifference. *Estelle v. Gamble,* 429 U.S. 97, 104 (9th Cir. 1976). Because the refusal of prescribed epilepsy medication can be a violation of a clearly established constitutional right, Melton is not entitled to qualified immunity at this stage. *Jones v. Faulkner Cnty.,* 609 F. App'x 898, 900 (8th Cir. 2015) (reversing summary judgment because defendants were aware of the prisoner's need for epilepsy medication but withheld it); *Williamson v. Evitts,* 925 F.2d 1467 (6th Cir. 1991) (holding prisoner had sufficiently alleged deliberate indifference by claiming the pill line nurse withheld his medication); *cf Hudson,* 148 F.3d at 863 (upholding dismissal of claims against defendants who were unaware that the prisoner was not receiving his epilepsy medication).

B. Chau

Arellano claims Chau was deliberately indifferent to his serious medical condition, epilepsy, by refusing to alter his treatment to Gabapentin instead of Keppra. (ECF No. 12, at 19.) But "a difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel,* 681 F.3d 978, 987 (9th Cir. 2012); *see also*

---

[3] While, a jury might conclude Arellano was simply not present to get his medication that day and that his contention otherwise is not credible, at this stage, since Arellano swears otherwise, it is a question of credibility and must be left to the jury rather than adjudicated at summary judgment. *See Goldman*, 245 U.S. at 477.

5

*Estelle,* 429 U.S. at 107 (holding that a medical decision to take one treatment route over another does not represent cruel and unusual punishment). Although Arellano was prescribed Gabapentin in the past, the same doctor prescribed Keppra, as well. (ECF No. 59-3, at 3.) Arellano has not provided evidence to show Chau's Keppra treatment plan was medically unacceptable. *See Jackson v. McIntosh,* 90 F.3d 330, 332 (9th Cir. 1996) (concluding that one way to show a doctor was deliberately indifferent is to show that the treatment was "medically unacceptable"). In fact, because both doctors prescribed Keppra, the only evidence presented is that the treatment provided was medically acceptable. This is especially true because the uncontested record reveals that Gabapentin is not FDA-approved for the treatment of Arellano's diagnosis. (*See* ECF No. 59-3, at 3 (Dr. Feinstein's declaration, uncontested by plaintiff, that there "is insufficient evidence to support FDA approval for treatment of generalized tonic clonic seizures, which is the type of seizure consistent with Plaintiff's descriptions of his seizure episodes").) Finally, defendants' expert testified, without contradiction that the California Correctional Health Care Services removed Gabapentin from its formulary list due to "a growing body of evidence that gabapentinoids carry a risk of dependency, abuse, and misuse." (*Id.*)

Because Arellano has not met his burden of presenting evidence to show Keppra is a medically unacceptable treatment for epilepsy under the circumstances, his deliberate indifference claim against Chau fails.

Further, there are no cases clearly establishing that treating epilepsy with Keppra is deliberately indifferent, therefore Chau is also protected by qualified immunity. *See Hall v. Brown,* No. 14-cv-02380-CMA, 2015 WL 5289885, at *8 (D. Colo. Aug. 17, 2015) (refusing to prescribe Gabapentin over Keppra is not deliberate indifference).

C. <u>Roberts, Glynn, and Lewis</u>

Arellano argues that when Roberts, Glynn, and Lewis denied his appeals of his grievances, they were deliberately indifferent, and therefore violated his right to be free from cruel and unusual punishment. (ECF No. 12, at 10-11.) It is not clearly established that denial of a grievance petition when medical treatment is being provided constitutes

deliberate indifference. *Greene v. Daley,* 414 F.3d 645, 656 (7th Cir. 2005) (concluding administrative officers are not permitted, much less required, to second guess a doctor's medical opinion). Therefore, Roberts, Glynn, and Lewis are entitled to qualified immunity, and summary judgment should be granted in their favor.

## II. *Americans with Disabilities Act*

It is not clear from his complaint or from his opposition to defendants' motion for summary judgment how Arellano claims defendants violated the ADA. As best the Court can determine, according to Arellano, defendants violated the ADA when they refused to switch him to Gabapentin because it deprived him of "life necessity's." (ECF No. 12, at 5). The purpose of the ADA is to set "standards addressing discrimination against individuals with disabilities" and provide recourse for discrimination based on that disability. 42 U.S.C. § 12101(b). In order to recover monetary damages under Title II of the ADA, a plaintiff must satisfy four elements: the plaintiff must be (1) "an individual with a disability"; (2) who is "otherwise qualified to receive the benefit"; (3) "denied the benefits of the program solely [and intentionally] by reason of his disability; and (4) the program [must receive] federal financial assistance." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).

Arellano has not provided sufficient evidence to satisfy the third element. As to Chau, Arellano is qualified to receive treatment in Donovan. The undisputed evidence shows he was treated. He was not denied the benefits of medical treatment or the medical program. Arellano successfully filed and then appealed grievances, therefore Roberts, Glynn, and Lewis did not deny Arellano the benefits of the grievance system.

Regarding Melton, the result is the same. According to Arellano, Melton withheld his medication because he had a paper ID rather than the prison's official ID. According to Arellano's own recount, she did not withhold his medication because of his disability, but because he was not in compliance with a prison regulation. He was not denied the benefit of the program based solely on discrimination against his disability, and therefore he cannot show a violation of the ADA.

7

The Court recommends granting defendants' motion for summary judgment on the ADA claims.

III. *Due Process*

Finally, Arellano claims the defendants violated his right to procedural due process, but his claim is again unclear. (ECF No. 12, at 5.) It appears Arellano claims defendants violated due process by being deliberately indifferent. (*See* ECF No. 12, at 5; s*ee also* ECF No. 97, at 13-14.) However, "attacking the result instead of the process of a procedure does not state a procedural due process claim." *Milburn v. City of Lebanon,* 221 F. Supp. 3d 1217, 1222 (D. Or. 2016); *Ward v. Temple,* No. Civ.A. 02-7414, 2003 WL 21281768, at *5 (E.D. Pa. Jan. 2, 2003). Therefore, there is no violation of procedural due process, and summary judgment should be granted.

Further, even if the Court assumes Arellano claimed the violation occurred with the denial of his grievances, the claim still fails. Procedural due process is violated when "there exists a liberty or property interest of which [the plaintiff] has been deprived … [and] the state's procedures were constitutionally [in]sufficient." *Swarthout v. Cooke,* 562 U.S. 216, 219 (2011). The "right to petition the government for the redress of grievances" is constitutionally protected. *Turner v. Safley,* 482 U.S. 78, 84 (1974). However, that is a right of access to the courts, not a right to a prison grievance system. *Riley v. Roach,* 572 F. App'x 504, 507 (9th Cir. 2014); *Mann v. Adams,* 855 F.2d 639, 640 (9th Cir. 1988). *But see Bradley v. Hall,* 64 F.3d 1276, 1279 (9th Cir. 1995) ("The right of meaningful access to the courts extends to established prison grievance procedures." (citing *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989))). Access to a prison grievance system is not a constitutional right, but even if it were, Arellano received the benefits of the grievance system. *See Milburn,* 221 F. Supp. 3d at 1222.

# **CONCLUSION**

The Court recommends granting summary judgment in favor of Chau, Roberts, Glynn, and Lewis on all claims, granting summary judgment as to Melton on all claims except the Eighth Amendment deliberate indifference, and denying summary judgment to Melton as to that one claim. The parties may file written objections within 14 days of service of this report. Failure to file objections may result in a waiver of those objections on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: August 23, 2018

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE